## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

ZHIYONG HUANG

            Plaintiff

v.

THE PARTNERSHIPS AND
UNINCORPORATED ORGANIZATIONS IN
SCHEDULE A

            Defendants

Case No.: 24-cv-05569

Judge John J. Tharp

Magistrate Judge Keri L. Holleb

### SECOND MEMORANDUM IN SUPPORT OF PLAINITFF'S *EX PARTE* SECOND MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND SERVICE OF PROCESS BY ELECTRONIC EMAIL, AND/OR PUBLICATION

ZHIYONG HUANG, "Plaintiff", submits this Memorandum in support of his *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a temporary injunction, a temporary asset restraint, expedited discovery, and service of process by email and/or electronic publication (the "*Ex Parte* Motion").

### MEMORANDUM OF LAW

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT.

Plaintiff brings this action against the Defendants identified in sealed Schedule A of the Complaint (Dkt. 1), for federal patent infringement. As alleged in the Complaint, Defendants engaged in the marketing, advertising, importation, distribution, offering for sale, and selling the same, infringing 'Brush' Products ("Infringing Products") in connection with Plaintiff awarded

United States Design Patent D952355 (U.S. Pat. D**355 or "Official 'Brush' Products"), through various online marketplace accounts set forth in Schedule A, also known as "Defendant Internet Stores", each Defendant selling the same, infringing products, such as multiple ASINs, related to their specific Defendant Internet Stores. Screenshots of the same, infringing 'Brush' Products obtained from the Defendant Internet Stores are shown in sealed Exhibit C of the Complaint. In short, Defendants run illicit stores that sell the same, infringing knock-off Products with disregard for anything except generating profits. Exhibit D (attached hereto Sealed) provides an analysis of the components of the claimed design in the D**355 patent, comparison of those components to the prior art, and comparison against each defendant listed amended Schedule A.

The Defendants create the Defendant Internet Stores with the intent to have them appear to be selling licensed Official 'Brush' Product, while in reality they are selling the same, Infringing Products, in violation of Plaintiff's patent right. Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their infringing operations. Plaintiff filed this action to combat Defendants' selling the same product that infringes the **355 patent, as well as to protect consumers from purchasing, on information and belief, inferior product.

This Court has personal jurisdiction over Defendants because Defendants target Illinois residents and have offered to sell, and on information and belief, have sold and continue to sell Infringing Products to consumers within the United States and in the State of Illinois. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase the same, infringing products being sold in connection with Plaintiff's Official 'Brush'

Products and the **355 patent.

Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue an *ex parte* Temporary Restraining Order. Specifically, Plaintiff seeks an order to (1) temporarily restrain Defendants' continued manufacture, importation, distribution, offering for sale, and sale of Infringing Products, and (2) temporarily restraining Defendants' assets to preserve Plaintiff's right to an equitable accounting. Ancillary to and as part of the TRO, Plaintiff respectfully request that this Court (3) authorize expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to the manufacture, distribution, offering for sale, and sale of the same, Infringing Product and Defendants' financial accounts; and (4) authorize service by electronic mail or electronic publication, due to the fact that Defendants are, on information and belief, located in China and Plaintiff, though with diligent effort, have been unable to locate them.

In light of the covert nature of offshore design patent infringing activity being undertaken by Defendants namely selling the same, infringing product that infringes the **355 patent, and the vital need to establish an economic disincentive for counterfeiting, federal circuit courts regularly issue orders awarding such relief. *See, Oakley Inc. v. Sunglass Hut International*, 316 F.3d 1331, 1338 (Fed. Cir. 2003)("… Oakley sued Sunglass Hut on November 6, 2001, for, *inter alia*, infringement of the '902 patent, and sought a temporary restraining order ("TRO") … The court entered the TRO on November 20 …"); *See also, Edge Systems LLC v. Aguila*, 635 F. App'x 897, *3-4 (Fed. Cir. 2015)("The next month, Appellees' Emergency Motion for *Ex Parte* Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction was granted.")

Plaintiff's well-pleaded factual allegations, which must be accepted as true, and evidence

submitted through declarations, establishes that issuing a temporary restraining order against Defendants is necessary and proper. Plaintiff can demonstrate a strong likelihood of success on the merits, irreparable harm if the injunction is not granted, the balance of hardships falls in favor of the Plaintiff, and it is in the public interest to grant this temporary injunction. *Oakley, Inc.,* 316 F.3d at 1338 ("A decision to grant or deny a preliminary injunction is within the sound discretion of the district court, based upon its assessment of four factors: (1) the likelihood of the patentee's success on the merits, (2) irreparable harm if the injunction is not granted, (3) the balance of hardships between the parties, and (4) the public interest.")

Regarding a design patent, infringement occurs "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same." *Samsung Elecs. Co. v. Apple, Inc.,* 137 S. Ct. at 432 (2016), quoting, *Gorham Co. v. White,* 14 Wall. 511, 525, 20 L. Ed. 731 (1872). In the present case and in view of the evidence of Defendants' Infringing Products (Dkt 1, Exhibit C (sealed)) and the designs covered in Plaintiff's **355 patent (Dkt. 1), notably implementation of the framing Design of 'Brush', to the eye of an ordinary observer, being that of a purchaser, shows that the design in the **355 patent and the Infringing Products exactly alike. Exhibit D (attached hereto Sealed) provides an analysis of the components of the claimed design in the D**355 patent, comparison of those components to the prior art, and comparison against each defendant listed amended Schedule A.

Regarding a finding of irreparable harm, the Federal Circuit has held where validity and continuing infringement have been clearly established, immediate harm is presumed. *Smith Intern., Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983). The **355 design patent was subject to an intense review by the U.S. patent examiner, which involved the consideration of over a dozen design patents and searching in variety of key areas (Exhibit 1). In light of such

an extensive prior art search, the examiner found Plaintiff 'Brush' design patentable. *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 9 (Fed. Cir. 2015) ("Design patents are presumed to be valid."); *see also*, 35 U.S.C. § 282. As of the filing of this temporary restraining order, Defendants Internet Stores are still marketing and selling the same Infringing Products (Declaration of Robert DeWitty ("DeWitty Decl.")).  In light of the patent **355's validity and the continuing infringement activity of Defendants, Plaintiff are suffering and will continue to suffer irreparable harm in the event this temporary restraining order is not granted.

Regarding the balance of hardships between the parties, as Plaintiff have a sincere interest in enforcing its patent rights, the balance of hardships weighs in favor of Plaintiff. *Apple, Inc. v. Samsung Elecs. Co*., 678 F.3d 1314, 1338 (Fed. Cir. 2012) ("the balance of hardships weighs in Apple's favor because it has an interest in enforcing its patent rights."); *see also*, *Edge Systems LLC v. Aguila*, 635 F. App'x at 1359 ("Equitable relief is also available in patent infringement suits.")

The public interest is further served by granting Plaintiff this temporary restraining order. *Smith Intern., Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983) ("public policy favors protection of the rights secured by the valid patents."); *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1458 (Fed. Cir. 1988) ("Here, the district court found, with respect to most of Abbott's products involved in this proceeding, that the public interest in enforcing valid patents outweighed any other public interest considerations. … We cannot hold that the district court's public interest analysis provides a basis for us to disturb its grant to Hybritech of preliminary relief.")

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind third parties, such as online platforms like Amazon.com and financial institutions, who are in active concert with the Defendants, or who aid and abet Defendants and are given actual notice of the

5

order. *See, Lead Creation, Inc. v. The P'ships & Unincorporated Ass'ns Identified on Schedule A*, 8:23-cv-49-CEH-CPT, at *12 (M.D. Fla. Feb. 14, 2023) ("… the Court finds that the Defendants may hide or transfer any ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained."); *Mattel, Inc. v. Entities Doing Bus. on Amazon.com Under Brand Name Barbegio*, 20-cv11069 (AJN), at *1 (S.D.N.Y. Mar. 5, 2021) ("Plaintiff simultaneously filed under seal an *ex parte* motion for attachment and temporary restraining order to prevent Defendants from transferring or withdrawing their funds from Amazon.com.") Similarly, a pre-judgement asset freeze is also proper since Plaintiff seek an equitable remedy in the accounting of Defendants' profits pursuant to 35 U.S.C. § 289. Finally, an order authorizing service of process by email and/or electronic publication is proper as a result of Defendants' intentional efforts to conceal their identities and operate their businesses online. Serving Defendants electronically is the best method for notifying them of this action and providing them the opportunity to defend and present their objections.

## II. STATEMENT OF FACTS.

### A. Plaintiff's 'Brush' patent (**355) and corresponding Products.

Plaintiffs 'Brush' products, based on the **355 patent, are recognized as an inventive design for detangling hair, notably the hair texture found predominantly on African-Americans. The brush consists of several separable strips that form a hollow body. Each strip is evenly distributed with bristles. The back of the brush has a detachable bracket that can be adjusted to change the width of each strip, meeting different combing needs. Since the **355 patent issued in May 24, 2022 (with a filing date of April 25, 2021), the Brush has increasingly become popular online, spurring the same, infringing product. On information and belief, the 'Brush' products are sold around the world via distributors and retail outlets, and thousands of units have

been sold.  Online sales of 'Brush' products have represented a significant portion of Plaintiff's

business.  DEWITTY DECL.  Plaintiff designed, patented, and launched its 'Brush' products

long before Defendants' acts described herein.  Plaintiff is the owner of the **355 patent,

whereby the **355 is valid and enforceable.  A true and correct copy of the **355 patent is

attached to the Complaint (Exhibit A).

The **355 is a valid patent that was subject to pre-allowance examination.  *See, High*

*Point Design, LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632 (Fed. Cir. 2015) ("Design patents are

presumed to be valid."); *See also,* 35 U.S.C. §282.

**B.     Defendants' Unlawful Activities.**

The success of the 'Brush' product has resulted in it being copied exactly. DEWITTY

DECL. Defendants intentionally copied the 'Brush' design due to its market success, including

online market success, which resulted from the 'Infringing Products' having the exact same

design as the claimed **355 design: strips on a solid body, with each strip having bristles.

Plaintiff has established that Defendants sell Infringing Products to consumers in the United

States and the State of Illinois, including within the Middle District of Illinois.  DEWITTY

DECL.  Internet Stores, like Defendant Internet Stores, i.e., those owned by The Partnerships and

Unincorporated Associations of Schedule A, attached hereto, whereby they possess identifiers

such as their respective ASINs ("Amazon Standard Identification Number"), are estimated to

receive tens of thousands of visits per year and generate several hundreds of thousands of dollars

in annual online sales.  DEWITTY DECL.  Defendants' Infringing Products is shown in Exhibit

C of the Complaint (sealed). DEWITTY DECL.  As shown, all defendants sell the same,

infringing product, which infringes the **355 patent. Comparison of defendants' same

infringing product with the components of the claimed design is shown in Exhibit D.

Upon information and belief, Defendants maintain off-shore bank accounts and regularly

move funds from its accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of transaction logs from similar cases brought by other patent owners indicates that off-shore counterfeiters regularly move funds from their U.S. accounts to China-based bank accounts outside the jurisdiction of this Court. DEWITTY DECL.

The tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for the Plaintiff to discover the true identity of the Defendants. DEWITTY DECL.

## III. ARGUMENT.

### A. Temporary Restraining Order is necessary in this case to maintain status quo of monetary accounts.

The purpose of a temporary restraining order is to preserve the status quo until the Court has an opportunity to conduct a hearing on a preliminary injunction. *Garcia v. Yonkers School Dist*, 561 F.3d 97, 107 (2d Cir. 2009) ("The purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction."). Plaintiff requests relief in the form of preservation of this long-standing status quo. Defendants want to disrupt this status quo in dramatic fashion by introducing their infringing designs for sale in online stores. In circumstances like these, courts often grant preliminary relief. *See, Lead Creation, Inc. v. The P'ships & Unincorporated Ass'ns Identified on Schedule A at \*1; GENENTECH, INC. v. NOVO NORDISK*, 935 F. Supp. 260, 265 (S.D.N.Y. 1996) ("On June 14, 1995, this court issued a temporary restraining order to preserve the status quo pending the Court's ruling on Genentech's motion for a preliminary injunction. On June 28, 1995, this motion was granted."). Freezing of bank accounts and financial accounts has been recognized as a means of maintaining the status

8

quo. *See*, *Church & Dwight Co. v. Kaloti Enterprises of Michigan, L.L.C.*, 07 Civ. 0612 (BMC),

at *2 (E.D.N.Y. Jan. 30, 2012) ("this Court issued a Temporary Restraining Order freezing all

bank accounts "used by" Y&P Wholesale. Pursuant to this Order, three bank accounts in the

name of Y&P Imports were frozen."); *See also*, *N. Atl. Operating Co. v. Scott*, No. 16-12076

(E.D. Mich. July 1, 2016) (granting TRO in view of the courts view that Defendants are likely to

change, destroy, or delete evidence related to any counterfeit activity, including existing online

marketplace accounts and associated records, and transfer or hide any assets from their financial

accounts, including PayPal accounts). In the absence of a temporary restraining order without

notice, the Defendants can and likely will modify registration data and content, redirect traffic to

other stores in their control, and move any assets from U.S.-based accounts. Courts have

recognized that civil actions against counterfeiters present special challenges that justify

proceeding on an *ex parte* basis. Plaintiff respectfully request that this Court issue the requested

*ex parte* temporary restraining order to maintain the status quo.

     **B.**     **This Court has original subject matter jurisdiction, as well as personal**
**jurisdiction over Defendants.**

     This Court has original subject matter jurisdiction over the claims in this action pursuant

to the provisions of 28 U.S.C. § 1338 ("The district courts shall have original jurisdiction of any

civil action arising under any Act of Congress relating to patents …").

     This Court has personal jurisdiction over Defendants as in this Judicial District pursuant

to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(3), or in the alternative, Fed. R. Civ. P. 4(k)

because, upon information and belief, Defendants regularly conduct, transact and/or solicit

business in Illinois and in this Judicial District, and/or derive substantial revenue from business

transactions in Illinois and in this Judicial District and/or otherwise avail themselves of the

privileges and protections of the laws of the State of Illinois such that this Court's assertion of

jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in Illinois and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Illinois and this judicial District. *See Lead Creation, Inc.* at *7.

Defendants' Internet Stores accept orders for Infringing Products from and offer shipping to Illinois addresses located in this Judicial District. Screenshots of the shopping cart from Defendants' Internet Stores allowing the same, Infringing Products to be shipped to this Judicial District is attached as Exhibit 2. This court has established that personal jurisdiction may be established over defendants who, in cases such as this, actually operate interactive websites that are accessible in Illinois and that the defendants aim such sites at Illinois by standing ready, willing, and able to ship its goods to consumers in Illinois in particular. *Mori Lee, LLC v. The P'ships & Unincorporated Ass'n Identified On Schedule "A"*, 20 C 7648, at *6 (N.D. Ill. Feb. 22, 2022) ("In the context of cases like this one, [plaintiff] must show that [defendant] is actually operating an interactive website that is accessible in Illinois and that [defendant] has aimed such site at Illinois by standing ready, willing and able to ship its … goods to customers in Illinois in particular …." quoting, *Am. Bridal & Prom Indus. Ass'n v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 192 F.Supp.3d 924, 934 (N.D. Ill. 2016).")

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of patent infringement in this Judicial District, do substantial business in the Judicial District, have registered agents in this Judicial District, and/or reside or may be found in this district.

**C.      Standard for Issuance of a Temporary Restraining Order.**

Plaintiff seeking a temporary restraining order are required to show a likelihood of success on the merits, a balance of hardships tipping in the Plaintiff' favor, the likelihood of irreparable harm if the temporary restraining order is not granted, and the nature and extent of public interest. *See, eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).

This District Court has held that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *Deckers Outdoor Corp. v. Partnerships*, No. 13 C 519 (N.D. Ill. Jan. 25, 2013). The Supreme Court has reminded district courts considering requests for injunctive relief in patent cases that the traditional rules of equity apply to such an application, including the requirement that the movant demonstrate the likelihood of irreparable harm. *Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 251 (S.D.N.Y. 2006), aff'd, 263 F. App'x 57 (Fed. Cir. 2008) (citing *eBay, Inc. v. MercExchange, L.L.C.*, 547U.S. 388, ——, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641 (2006)).

### 1. Plaintiff Will Likely Succeed on the Merits of its Patent Infringement Claim.

To obtain temporary injunctive relief, Plaintiff must show some likelihood of success on the merits. *See*, *Abbott Lab'ys v. Sandoz, Inc.*, 544 F.3d 1341, 1366 (Fed. Cir. 2008); *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed. Cir. 1988) (rejecting argument that patentee must prove infringement and validity "beyond question" in order to secure a preliminary injunction). For patents, likelihood of success rests upon validity of the patent and infringement. *Abbott Laboratories*, at 1368 (Fed. Cir. 2008) ("In seeking a preliminary injunction pursuant to section 283, a patent holder must establish a likelihood of success on the merits both with respect to validity of its patent and with respect to infringement of its patent .")

### a. Plaintiff can establish validity of the **355 patent.

Whereas an issued design patent is presumed valid, Plaintiff's patent was subjected to a high degree of examiner scrutiny during the patent prosecution process (Exhibit 1). DEWITTY DECL. *See*, *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 9 (Fed. Cir. 2015) ("Design patents are presumed to be valid."); *See also*, 35 U.S.C. § 282. To challenge Plaintiff's request for emergency relief, it is Defendants' burden to prove that Plaintiff' patent is invalid. *Oakley, Inc. v. Sunglass Hut International*, 316 F.3d 1331, 1339 (Fed. Cir. 2003) ("in the context of a preliminary injunction ... the burden of proving invalidity is with the party attacking validity"). Under Federal Circuit precedent, Defendants' must do more than raise a "substantial question". Defendants' must present evidence sufficient to convince the Court that Plaintiff are unlikely to succeed on the merits of its validity claim. *Abbott*, 544 F.3d at 1364 ("the correct standard is not whether a substantial question has been raised, but whether the patentee is likely to succeed on the merits, upon application of the standards of proof that will prevail at trial").

Plaintiff has a strong likelihood of success with respect to the validity of the **355 patent.

### b. Plaintiff can establish infringement of design patent.

In design patent law, a design patent is determined infringed based upon the eye of the ordinary observer. *See, Egyptian Goddess v. Swisa*, 543 F.3d 665, 676 (Fed. Cir. 2008); *See also*, *Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc.*, No. 3:15-CV-849-J-34PDB, 2019 WL 1304290, at *10, n.11 (M.D. Fla. Mar. 21, 2019), aff'd sub nom. *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2020) ("such examination must be part of the overall ordinary observer test, not as a separate test focused on particular points of novelty"). 'Substantially similar' is generally the question to be addressed in judging design patent infringement. *Egyptian Goddess v. Swisa*, at 678 (Fed. Cir. 2008) ("when the claimed and accused designs are not plainly dissimilar,

resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art"). As shown in the Chart 1 below, Defendants' Infringing are exactly the same as Plaintiff's. For brevity, Plaintiff have only included a few examples of Defendants' Infringing Products:

| Design of **355 Patent | Defendant Copycat |
|---|---|
|  | <br>BRUSHZOO |



In the eye of an ordinary observer, Defendants' Infringing Products are exactly the same as the designs of the **355 patent. Plaintiff will thus be successful in their assertion of infringement.

       **2.      Plaintiff will suffer Irreparable Harm without Injunctive Relief.**

Irreparable injury should be presumed because the Plaintiff has established infringement and validity of the **355 patent. *See*, *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001) (when a moving party makes "clear showing" of validity and infringement "it is entitled to a rebuttable presumption of irreparable harm").

> "[T]his presumption derives in part from the finite term of the patent grant, for patent expiration is not suspended during litigation, and the passage of time can work irremediable harm ... The nature of the patent grant thus weighs against holding that monetary damages will always suffice to make the patentee whole, for the principal value of a patent is its statutory right to exclude."

*H.H. Robertson Co. v. United Steel Deck*, 820 F.2d 384, 390 (Fed. Cir. 1987) (overruled on other grounds at *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995)). *See also*, *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (affirming injunction and finding "the essential attribute of a patent grant is that it provides a right to exclude competitors").

**3.      The Balance of Hardships weighs strongly in favor of granting Plaintiff Injunctive Relief.**

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) the threat of irreparable harm if preliminary relief is not granted, and (2) there is no adequate remedy at law, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *See*, *Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 256. As infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the patent owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the Plaintiff' patent." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996).  Plaintiff will continue to suffer from their inability to exercise the monopoly created under the **355 patent.

As Plaintiff has shown, Defendants have been profiting from the sale of Infringing Products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease its unlawful conduct.

> 4. **Issuance of the Injunction is in the Public Interest.**

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendants from violating federal patent law and ensure consumers receive authentic product. Defendants are selling the same, Infringing Products. The public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Plaintiff's approval and endorsement.

The public's interest in enforcing patent rights must also be weighed with other aspects of the public interest. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1372 (Fed. Cir. 2013); *see also*, *Shashi, Inc. v. Ramada Worldwide, Inc.*, No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion").

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of patent and service marks used in connection with those goods and services. Unless Defendants' unauthorized use of **355 Brush patent is enjoined, the public will continue to be confused and misled by Defendants' conduct.

For these reasons, it is respectfully submitted that granting Plaintiff's Motion for Entry of a Temporary Restraining Order is in the public interest.

16

## IV. ARGUMENT.

Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition, and the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. *Chicago United Industries v. City of Chicago*, 445 F.3d 940, 946 (7th Cir. 2006) ("The proper interpretation of the "without notice" language in Rule 65(b) is that the rule imposes *additional* restrictions on temporary restraining orders issued without notice, but imposes the 20-day limit on *all* TROs."). Moreover, under Federal Rule of Civil Procedure 65(d)(2)(c), as stated above, this Court has the power bind any third parties, such as financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. The facts in this case warrant such relief.

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff' **355 Patent is Appropriate.

Plaintiff's request a temporary injunction requiring the Defendants to immediately cease the marketing, sale, importation, and/or distribution of the same, Infringing Products, which on information and belief, supported by evidence herein, in connection with Defendants' Internet Stores. Such relief is necessary to stop the ongoing and irreparable harm to Plaintiff', continuing infringement of the **355 patent, harm to consumers through the sale of Infringing Products, and to prevent the Defendants from continuing to benefit from their infringement of the **355 patent.

The need for *ex parte* relief is magnified in today's global economy where patent infringers manufacturing the same, Infringing Products can operate over the Internet in an anonymous fashion. Plaintiff is currently unaware of both true identity and location of the Defendants, as well as other Defendant Internet Store(s) used to distribute the same, Infringing 'Brush' Products.

Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of an issued patent. *See, Moen, Inc. v. Foremost International Trading Inc.*, 19 F. Supp. 2d 854, 857 (N.D. Ill. 1998) ("Plaintiff/movant has met the requirements for the grant of a preliminary injunction. It is hereby ordered that a preliminary injunction as requested is entered in favor of the Plaintiff and against the Defendant."); *Oakley, Inc. v. Sunglass Hut International*, 316 F.3d 1331, 1338 (Fed. Cir. 2003) ("... Oakley sued Sunglass Hut on November 6, 2001, for, inter alia, infringement of the '902 patent , and sought a temporary restraining order ("TRO") … The court entered the TRO on November 20 …"); *See also*, *In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2nd Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief.)

**B. Preventing the Fraudulent Transfer of Assets is Appropriate.**

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff' right to an equitable accounting of Defendants' profits from sales of the same, Infringing Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard its responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information

and belief, the Defendants in this case hold most of its assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when Plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters.*, Inc., 970 F.2d 552, 559 (9th Cir. 1992). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its patent infringement claim, so according to 35 U.S.C. § 284, Plaintiff is entitled to "damages adequate to compensate for the infringement … together with interest and costs … ." Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringing acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff.

The Supreme Court in *Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. In *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 987 (11th Cir. 1995), the district court had the authority to freeze those assets which could have been used to satisfy an equitable award of profits.

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move its ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

### C.    Plaintiff is entitled to Expedited Discovery.

The Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits. *See, Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978). With constitutional limits, a district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. See Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As described above, Defendants are using third-party payment processors, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). Plaintiff's counsel is aware that the same third parties, in previous lawsuits, have worked with patent owners and is not aware of any reason that Defendants or third parties cannot comply with these expedited discovery requests without undue burden. Further, all relevant third parties have in fact complied

with identical requests in previous similar cases. More importantly, as Defendants have engaged in many deceptive practices in hiding their identities and accounts, Plaintiff's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

**D.      Service of Process by E-mail and/or Electronic Publication is Warranted in this Case.**

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests this Court's authorization to serve process by electronically publishing a link to the Complaint, the Temporary Restraining Order, and other relevant documents on a website, and/or by sending an e-mail to any e-mail addresses provided for Defendants by third parties that includes a link to the website. Plaintiff submits that providing notice via electronic publication and/or e-mail, along with any notice that Defendants receive from a third party such as Amazon, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Electronic service is appropriate and necessary in this case because the Defendants, on information and belief: (1) have provided false name and physical address information in its registration for the Defendant Online Marketplace Accounts in order to conceal their locations and avoid liability for its unlawful conduct; and (2) rely primarily on electronic communications to communicate with their registrars and customers, demonstrating the reliability of this method of communication by which the registrants of Defendants may be apprised of the pendency of this action. Authorizing service of process solely via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve Defendants

21

in this manner, Plaintiff will almost certainly be left without the ability to pursue a final judgment.

Past investigation and discovery of Online Marketplace Accounts in similar cases reveals that Defendants appear to have provided false physical address information to the online Marketplaces in order to avoid full liability. DeWitty Decl. Identical contact information among multiple seller accounts also suggests that many of the aliases used to register the Defendant accounts are used by the same individual or entity. DeWitty Decl.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *See*, *In re Oneplus Tech. (Shenzhen) Co.*, No. 2021-165, at *6 (Fed. Cir. Sep. 10, 2021) ("however, Rule 4(f)(3) is not a "last resort" or a type of "extraordinary relief" for a plaintiff seeking to serve process on a foreign defendant"); *See also*, *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). ("To the contrary, "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing."). The Ninth Circuit in <u>Rio Properties</u> held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Rio Props.*, at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id*.

Plaintiff submits that allowing service solely by e-mail and/or electronic publication in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the registrants of Defendants to conduct their Internet- based activities anonymously.

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props. v. Rio Intern. Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002). As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id*. at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id*. Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id*. As such, this Court may allow Plaintiff to serve the Defendants via electronic publication and/or e-mail.

Plaintiff respectfully requests this Court's permission to serve Defendant via e-mail and/or electronic publication.

## V.     A BOND SHOULD SECURE THE INJUNCTIVE RELIEF.

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp*., 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). It is well established in the Second Circuit that Rule 65(c) invests the district court wide discretion as to the amount of security required, lf any. *See*, *Doctor'.s Assocs. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997). Because of the strong and unequivocal nature of Plaintiff' evidence of counterfeiting, and infringement. Plaintiff respectfully request that this Court require Plaintiff to post a bond or surety bond of no more than One Hundred Thousand U.S. Dollars ($100,000.00). *See*, *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d

897, 910 (N.D. Ill. 2015) ("The appropriate amount of the bond is subject to the court's discretion.").

## VI.    CONCLUSION.

In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully request that this Court enter a Temporary Restraining Order in the form submitted herewith and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Plaintiff intend to present a motion for preliminary injunction.

DATED: June 15, 2024                          Respectfully Submitted:


_____
Robert M. DeWitty
Attorney for Plaintiff
1500 K Street, 2nd Floor
Washington DC 20005
Tel: 202-571-7070 / 202 888-4309
Email: admin@dewittyip.com
rmdewitty@dewittyip.com